**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ROBERT JAHODA,
individually and on behalf of all others
similarly situated,

            Plaintiff,

    v.

GATEWAY BANK OF PENNSYLVANIA,

            Defendant.

Case No.

Filed Electronically

## CLASS ACTION COMPLAINT

Comes now Robert Jahoda, ("Plaintiff") on behalf of himself and all others similarly situated and alleges as follows:

## INTRODUCTION

1.      Plaintiff Robert Jahoda brings this action individually and on behalf of all others similarly situated against Gateway Bank of Pennsylvania ("Defendant"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., (the "ADA") and its implementing regulations.

2.      Plaintiff is a blind individual.  He brings this civil rights class action against Defendant for failing to design, construct, and/or own or operate banking facilities that are fully accessible to, and independently usable by, blind people.  Specifically, certain of the ATMs in Defendant's ATM network are not fully accessible to, and independently usable by, blind people. From the time of their installation, certain of Defendant's ATMs have not been accessible to, and independently usable by, blind people, and those ATMs are devoid of some or all of the mandatory operational features required to make them accessible to, and independently usable

by, blind people, as required by the ADA and its implementing regulations.  Therefore, on behalf

of a class of similarly situated individuals, Plaintiff seeks a declaration that certain of

Defendant's ATMs violate federal law as described and an injunction requiring Defendant to

update or replace all ATMs that are in violation of the mandatory requirements of  the ADA so

that they are fully accessible to, and independently usable by, blind individuals.  Plaintiff further

requests that given Defendant's historical failure to comply with the ADA's mandate, over a

period of many years, the Court retain jurisdiction of this matter for a period to be determined to

ensure that Defendant comes into compliance with the relevant requirements of the ADA and to

ensure that Defendant has adopted and is following an institutional policy that will, in fact, cause

Defendant to remain in compliance with the law.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

3.      On July 26, 1990, President George H.W. Bush signed into law the ADA, a

comprehensive civil rights law prohibiting discrimination on the basis of disability.

4.      The ADA broadly protects the rights of individuals with disabilities in

employment, access to State and local government services, places of public accommodation,

transportation, and other important areas of American life.

5.      Title III of the ADA prohibits discrimination in the activities of places of public

accommodation and requires places of public accommodation to comply with ADA standards

and to be readily accessible to, and independently usable by, individuals with disabilities.  42

U.S.C. § 12181-89.

6.      On July 26, 1991, the Department of Justice ("DOJ") issued rules implementing Title III of the ADA, which are codified at 28 CFR Part 36.[1]

7.      Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 CFR part 36) contains the ADA standards for Accessible Design (1991 Standards), which were based upon the Americans with Disabilities Act Accessibility Guidelines (1991 ADAAG) published by the Access Board on the same date.[2]

8.      In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local government entities, as well as individuals with disabilities.

9.      In 1999, based largely on the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise its ADA and ABA Accessibility Guidelines.

---

[1]      The DOJ is the administrative agency charged by Congress with implementing the requirements of the ADA.

[2]      The Access Board was established by section 502 of the Rehabilitation Act of 1973.  29 U.S.C. §792.  The Board consists of 13 public members appointed by the President, the majority of whom must be individuals with disabilities, and the heads of the 12 Federal departments and agencies specified by statute, including the heads of the Department of Justice and the Department of Transportation.  Originally, the Access Board was established to develop and maintain accessibility guidelines for facilities designed, constructed, altered, or leased with Federal dollars under the Architectural Barriers Act of 1968.  42 U.S.C. § 4151 *et seq.*  The Passage of the ADA expanded the Access Board's responsibilities.

The ADA requires the Access Board to "issue minimum guidelines . . . to ensure that buildings, facilities, rail passenger cars, and vehicles are accessible, in terms of architecture and design, transportation, and communication, to individuals with disabilities."  42 U.S.C. 12204.  The ADA requires the DOJ to issue regulations that include enforceable accessibility standards applicable to facilities subject to title III that are consistent with the "minimum guidelines" issued by the Access Board, 42 U.S.C. § 12134(c), 12186(c), but vests with the Attorney General sole responsibility for the promulgation of those standards that fall within the DOJ's jurisdiction and enforcement of the regulations.

The ADA also requires the DOJ to develop regulations with respect to existing facilities subject to title III.

10.     The Access Board issued final publication of revisions to the 1991 ADAAG on July 23, 2004 ("2004 ADAAG").

11.     On September 30, 2004, the DOJ issued an advance notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG.

12.     On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

13.     The long-contemplated revisions to the 1991 ADAAG culminated with the DOJ's issuance of The 2010 Standards for Accessible Design ("2010 Standards"). The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards consist of the 2004 ADAAG and the requirements contained in subpart D of 28 CFR part 36.[3]

## THE ADA HAS LONG REQUIRED THAT FINANCIAL INSTITUTIONS THAT OWN, OPERATE, CONTROL AND/OR LEASE ATMS PROVIDE ATMS THAT ARE FULLY ACCESSIBLE AND INDEPENDENTLY USABLE BY BLIND PEOPLE

14.     Since the enactment of the ADA in 1991, banks and financial institutions which provide banking services through ATMs have been required to ensure that all banking services available at the ATM are fully accessible to, and independently usable by, individuals who are blind. The 1991 DOJ Standards required that "instructions and all information for use shall be made accessible to and independently usable by persons with vision impairments." 28 CFR part 36, App. A. section 4.34.4. Defendant has never been in compliance with this mandate.

15.     The 2004 ADAAG adopted very specific guidelines calculated to ensure that ATM banking services were, in fact, fully accessible to, and independently usable by, individuals who are blind.

---

[3]     Though the Effective Date of the 2010 Standards was March 15, 2011, the communication elements of Chapter 7 of the Standards—which frame Plaintiff's allegations in this case—did not become effective until March 15, 2012, at which time the 2010 Standards became enforceable through civil actions by private plaintiffs.

16.     Section 220.1 of the 2004 ADAAGs stated that "where automatic teller machines . . . are provided, at least one of each type provided at each location shall comply with Section 707."

17.     In turn, Section 707 of the 2004 ADAAGs delineated very precise accessibility guidelines for ATMs, including guidelines calculated to ensure that ATMs are fully accessible to, and independently usable by, visually impaired individuals.  These guidelines included, *inter alia*, the following elements:  ATMs shall be speech enabled (i.e. talking ATMs)—Section 707.5; input controls shall be tactilely discernible—Section 707.6; function keys shall have specific tactile symbols—Section 707.6.3.2; Braille instructions shall be provided for initiating the speech mode.

18.     As noted, the 2010 Standards adopt the 2004 ADAAG.  The communication elements of the 2010 Standards are set forth at Chapter 7-- including, in relevant part, the elements which are expressly calculated to make ATMs fully accessible to, and independently usable by, visually impaired individuals.  The Chapter 7 communication elements became fully effective on March 15, 2012.[4]

19.     Defendant owns, operates, controls and/or leases a place of public accommodation.

20.     Certain of Defendant's ATMs are not fully accessible to, and independently usable by, blind individuals.

---

[4]     The DOJ has consistently taken the position that the communication-related elements of ATMs are auxiliary aids and services, rather than structural elements.  *See* 28 CFR part 36, app. B at 728 (2009).  Thus, the 2010 Standards do not provide a safe-harbor provision for implementation of these requirements unless compliance would cause an "undue hardship" upon a public accommodation.

21.     While Defendant has centralized management policies regarding its ATM network, those policies are inadequate and certain of Defendant's ATMs continue to be inaccessible to, and not independently usable by, visually impaired individuals.

## JURISDICTION AND VENUE

22.     This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and 42 U.S.C. § 12188.

23.     Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

24.     Venue in this judicial district is proper under 28 U.S.C. §1391(b) and (c) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## PARTIES

25.     Plaintiff, Robert Jahoda, is and, at all times relevant hereto, was a resident of the Commonwealth of Pennsylvania.  Plaintiff is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*

26.     Defendant Gateway Bank of Pennsylvania is headquartered at 3402 Washington Road, McMurray, PA 15317.  Defendant is a public accommodation pursuant to 42 U.S.C. 12181(7)(F) which offers banking services through its ATMs.

## VIOLATIONS AT ISSUE

27.     After March 15, 2012, Plaintiff visited Defendant's ATM located at 900 Commonwealth Drive, Suite 100, Cranberry Township, PA, with a driver.

28.     At the time of the visit, the ATM was not fully accessible to, and independently usable by, blind people, in that the voice-guidance feature on the machine was not operational. Upon information and belief, certain of Defendant's ATMs are also equipped with voice-guidance features that are not operational.

29.     The machines in Defendant's ATM network have function keys that do not have specific tactile symbols required by the 2010 Standards.

30.     As a result of Defendant's non-compliance with the ADA, Plaintiff and the Class, unlike persons without visual impairments, cannot independently use certain of Defendant's ATMs.

31.     Defendant's non-compliance threatens blind people with the loss of their private banking information.  Blind people who wish to use certain of Defendant's ATMs have no choice but to repeatedly reveal their private PINs to others to complete an ATM banking transaction.

32.     In violation of Section 707.5 of the 2010 Standards, certain of Defendant's ATMs are not, and have never been, speech enabled, or they have a speech-enabling feature that is not functional.

33.     In violation of Section 707.6.3.2 of the 2010 Standards, at certain of Defendant's ATMs, the input keys do not have the correct tactile symbol.

34.     In violation of Section 707.6.3.2 of the 2010 Standards, at certain of Defendant's ATMs, there are no Braille instructions provided for initiating the speech mode.

35.     Though Defendant has centralized policies regarding the management and operation of its ATMs, Defendant has never had a plan or policy that is reasonably calculated to make all of its ATMs fully accessible to, and independently usable by, blind people.

36.     Plaintiff resides within approximately 15 miles of the location of Defendant's ATM described above.

37.     Plaintiff has actual knowledge of the fact that certain of Defendant's ATMs lack the mandatory elements required by the 2010 Standards to make the ATMs fully accessible to, and independently usable by, blind people.

38.     When Plaintiff visited Defendant's ATM, he had in his possession an ATM card, and headphones that are compatible with the 2010 Standards, and wanted the opportunity to avail himself of the banking services offered through Defendant's ATM.

39.     As a blind individual, Plaintiff has a keen interest in whether public accommodations that offer banking services through ATMs are fully accessible to, and independently usable by, the blind, specifically including an interest in ensuring that ATMs possess all of the features required by the 2010 Standards.

40.     Plaintiff intends to return to certain of Defendant's ATMs to ascertain whether they remain in violation of the ADA.

41.     Based upon his interest in the subject matter of this lawsuit, Plaintiff has actual knowledge that even when public accommodations which offer ATM banking services attempt to provide speech guidance at their ATMs, the speech guidance features frequently do not function as required by the 2010 Standards.

42.     For example, many ATMs have headphone jacks that do not function properly, or at all, and that therefore do not support the speech enabling that is required by the 2010 Standards (as described above, Defendant has many machines in its ATM network with voice guidance features that are not operational, including the ATM visited by Plaintiff and described above).

8

43.     In contrast to an architectural barrier at a public accommodation, wherein a remediation of the barrier to cause compliance with the ADA provides a permanent or long-term solution, the addition of, or repair to, a speech enabling function provided at the ATM of a public accommodation requires periodic monitoring to confirm, not only that the public accommodation is in compliance in the first instance, but also that the public accommodation remains in compliance.

44.     Without injunctive relief, Plaintiff will continue to be unable to independently use Defendant's ATM in violation of his rights under the ADA.[5]

## CLASS ALLEGATIONS

45.     Plaintiff brings this class action on behalf of himself and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of all legally blind individuals who have attempted to access Defendant's ATMs.

46.     The class described above is so numerous that joinder of all individual members in one action would be impracticable.  The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court.

47.     Typicality:  Plaintiff's claims are typical of the claims of the members of the class.  The claims of the Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

48.     Common Questions of Fact and Law:  There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and

---

[5]     Plaintiff intends to visit Defendant's ATMs periodically to monitor whether Defendant is in compliance with the ADA's requirements calculated to confirm that ATMs are fully accessible to, and independently usable by, blind people.

enjoyment of, Defendant's facilities and/or services due to Defendant's failure to make its ATMs fully accessible and independently usable as above described.

49.    <u>Adequacy of Representation:</u>  Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class.  Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class.  Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation.

50.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

<u>**SUBSTANTIVE VIOLATION**</u>

51.    The allegations contained in the previous paragraphs are incorporated by reference.

52.    Defendant has discriminated against Plaintiff and the Class in that it has failed to make its ATM banking services fully accessible to, and independently usable by, individuals who are blind in violation of 42 U.S.C. § 12182(a) and Section 707 of the 2010 Standards, as described above.

53.    Defendant has discriminated against Plaintiff and the Class in that it has failed to provide auxiliary aids and services calculated to make its ATM banking services fully accessible to, and independently usable by, individuals who are blind in violation of 42 U.S.C. § 12182(b)(2)(A)(iii) and Section 707 of the 2010 Standards, as described above.  Providing the auxiliary aids and services mandated by the ADA and Section 707 of the 2010 Standards would

neither fundamentally alter the nature of Defendant's banking services nor result in an undue

burden to Defendant.

54.     Defendant's conduct is ongoing, and, given that Defendant has never complied

with the ADA's requirements that public accommodations make ATM services fully accessible

to, and independently usable by, blind individuals, notwithstanding that those requirements have

been in place since 1991, Plaintiff invokes his statutory right to declaratory and injunctive relief,

as well as costs and attorneys' fees.

55.     Without the requested injunctive relief, specifically including the request that the

Court retain jurisdiction of this matter for a period to be determined after the Defendant certifies

that it is fully in compliance with the mandatory requirements of the ADA that are discussed

above, Defendant's non-compliance with the ADA's requirements that its ATMs be fully

accessible to, and independently usable, by blind people is likely to recur.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the members of the class, prays for:

a.      A Declaratory Judgment that at the commencement of this action Defendant was
in violation of the specific requirements of Title III of the ADA described above,
and the relevant implementing regulations of the ADA, in that Defendant took no
action that was reasonably calculated to ensure that all of its ATMs were fully
accessible to, and independently usable by, blind individuals;

b.      A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR §
36.504 (a) which directs Defendant to take all steps necessary to brings its ATMs
into full compliance with the requirements set forth in the ADA, and its
implementing regulations, so that the ATMs are fully accessible to, and
independently usable by, blind individuals, specifically including all of the
communications elements set forth in Section 707 of the 2010 Standards, and
which further directs that the Court shall retain jurisdiction for a period to be
determined after Defendant certifies that all of its ATMs are fully in compliance
with the relevant requirements of the ADA to ensure that Defendant has adopted
and is following an institutional policy that will in fact cause Defendant to remain
fully in compliance with the law;

c.      An Order certifying the class proposed by Plaintiff, and naming Plaintiff as a class
        representative and appointing his counsel as class counsel;

d.      Payment of costs of suit;

e.      Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR
        § 36.505; and,

f.      The provision of whatever other relief the Court deems just, equitable and
        appropriate.

Dated: June 18, 2012                         Respectfully Submitted,


                                             /s/ R. Bruce Carlson
                                             R. Bruce Carlson (PA56657)
                                             bcarlson@carlsonlynch.com
                                             Stephanie Goldin (PA202865)
                                             sgoldin@carlsonlynch.com
                                             CARLSON LYNCH LTD
                                             PNC Park
                                             115 Federal Plaza, Suite 210
                                             Pittsburgh, PA 15212
                                             www.carlsonlynch.com
                                             (p)  412 322-9243
                                             (f)   412 231-0246